IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Namon Joseph,

      Plaintiff,

      v.                    Case No. 2:11-cv-794

State Farm Fire and Casualty
Company,

      Defendant.


<u>OPINION AND ORDER</u>

This is an action brought by plaintiff Namon W. Joseph asserting claims for breach of contract and bad faith against defendant State Farm Fire and Casualty Company ("State Farm"). The claims are based on State Farm's cancellation of a homeowner's policy it had issued to plaintiff and State Farm's refusal to pay a claim made by plaintiff after a fire damaged the insured residence.

On March 5, 2009, plaintiff applied for a State Farm homeowner's insurance policy for the residence located at 12377 North Old 3C Highway, Sunbury, Ohio. <u>See</u> Doc. 20, Ex. A, Scott Hedges Declaration, Ex. 2. Plaintiff made his application by telephoning the office of State Farm agent Joni Stanton. Policy Number 35-BL-G460-9 was issued effective March 6, 2009, and was later extended on March 6, 2010, with an expiration date of March 6, 2011. <u>See</u> Hedges Decl., Ex. 1. On August 18, 2010, a fire destroyed the residence, and plaintiff filed a claim with State Farm for the loss. State Farm's investigation revealed evidence that the fire, which originated in the basement of the house, was the result of arson, and that an accelerant was used to start the

fire. During the course of the investigation, plaintiff made inconsistent statements to State Farm investigators concerning his whereabouts at the time of the fire and his cell phone coverage. State Farm learned that the night before the early-morning fire, plaintiff had checked into a motel located within a few minutes of the house. State Farm also learned that certain information provided by plaintiff for the policy application was false. Specifically, State Farm learned that, contrary to the representations on the policy: 1) plaintiff was not the owner of the insured residence at the time the policy was issued; 2) plaintiff had sustained a loss within five years of the issuance of the State Farm policy when his personal property, located in an apartment above his restaurant in Coshocton, Ohio, was damaged in an arson fire in 2006; and 3) Nationwide Insurance had cancelled a homeowner's policy on the residence within three years of the issuance of the State Farm policy.

   In light of the information that the fire was arson, State Farm began investigating plaintiff's personal and business financial situation to determine if plaintiff's finances would provide plaintiff with a motive to commit arson. State Farm's investigation revealed that plaintiff operated a restaurant in Coshocton, Ohio, and was in the process of constructing a new restaurant in Sunbury, Ohio. State Farm also learned that plaintiff owed the Internal Revenue Service approximately $391,000 in back taxes. Scott Hedges, State Farm's claim administrator, requested financial information from plaintiff's counsel. Some of that information was not provided, and in November of 2010, State Farm retained Attorney Timothy Ryan to assist in obtaining

plaintiff's financial records.  State Farm also authorized Ryan to retain a forensic accountant to review plaintiff's financial records.  Ryan corresponded with plaintiff's counsel over a four-month period.  Plaintiff persisted in his refusal to provide certain records, including his tax returns, and continually rescheduled the accountant's review of his records.  By letter dated June 7, 2011, State Farm denied plaintiff's claim and voided his policy as of August 18, 2010, citing the intentional acts clause and the concealment and fraud clause of the policy.

Plaintiff filed the instant action on August 9, 2011, in the Court of Common Pleas of Licking County, Ohio.  A notice of removal of the action to this court based on diversity of the parties was filed on September 1, 2011.  This matter is now before the court on State Farm's motion for summary judgment.

I. Summary Judgment Standards

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, by showing that the materials cited do not establish the absence or presence of a genuine dispute, or by demonstrating that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(A) and (B).  In considering a

3

motion for summary judgment, this court must draw all reasonable inferences and view all evidence in favor of the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Am. Express Travel Related Servs. Co. v. Kentucky, 641 F.3d 685, 688 (6th Cir. 2011).

The moving party has the burden of proving the absence of a genuine dispute and its entitlement to summary judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party's burden of showing the lack of a genuine dispute can be discharged by showing that the nonmoving party has failed to establish an essential element of his case, for which he bears the ultimate burden of proof at trial.  Id.  Once the moving party meets its initial burden, the nonmovant must set forth specific facts showing that there is a genuine dispute for trial.  Id. at 322 n. 3.  "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  Niemi v. NHK Spring Co., Ltd., 543 F.3d 294, 298 (6th Cir. 2008).  A fact is "material" only when it might affect the outcome of the suit under the governing law.  Id; Anderson, 477 U.S. at 248.

The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts[.]"  Matsushita, 475 U.S. at 586.  A mere scintilla of evidence is not enough.  Anderson, 477 U.S. at 252; Ciminillo v. Streicher, 434 F.3d 461, 464 (6th Cir. 2006).  Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  See Fed. R. Civ. P.

4

56(c)(3)(noting that the court "need consider only the cited materials").

## II.  Termination under Cooperation Clause

State Farm first argues that it was entitled to deny plaintiff's claim and terminate the policy due to plaintiff's lack of cooperation in its investigation of the fire.  Because the policy was issued in Ohio to an Ohio resident, its interpretation is governed by Ohio law.  Bank of N.Y. v. Janowick, 470 F.3d 264, 271 (6th Cir. 2006).  A cooperation clause is frequently included in an insurance policy to protect insurance companies against fraudulent claims.  Doerr v. Allstate Ins. Co., 121 Fed.Appx. 638, 640 (6th Cir. 2005).  Under Ohio law, an insured party has a duty to comply with a cooperation clause.  Id.; Luntz v. Stern, 135 Ohio St. 225, 232, 20 N.E.2d 241 (1939)(an insured "is required to make a fair and frank disclosure of information demanded by the company to enable it to determine whether there is a genuine defense").

When cooperation is a policy condition and an insured fails to comply, the insurer may be relieved of further obligation on the claim.  Gabor v. State Farm Mut. Auto. Ins. Co., 66 Ohio App.3d 141, 143, 583 N.E.2d 1041 (1990).  To constitute a defense to liability, an insured's lack of cooperation must result in material and substantial prejudice to the insurance company.  Id., 66 Ohio App. at 144.  Prejudice has been described as actions which seriously impair the insurer's ability to investigate a claim.  Weller v. Farris, 125 Ohio App.3d 270, 276, 708 N.E.2d 271 (1998).  Whether an insured has violated a cooperation clause is a question to be determined in view of the facts and circumstances in each case.  Id.  Although the issue of whether there has been a

5

violation of an insurance policy provision is generally for the factfinder, a court may decide the cooperation clause issue as a matter of law when a case presents undisputed facts.  Id.

The policy issued to plaintiff included both a cooperation clause and a clause which voided the policy in the event that the loss was the result of an intentional act by the insured.  The declarations section of the policy issued to plaintiff stated: "We agree to provide the insurance described in this policy ... based on your compliance with all applicable provisions of this policy[.]" Hodges Decl., Ex. 1.  The policy further provided: "You agree, by acceptance of this policy, that ... you will ... comply with the provisions of the policy[.]"  Hodges Decl., Ex. 1.

Under the heading **SECTION I - CONDITIONS**, the policy specified the insured's duties following a loss, which included:

d. as often as we reasonably require:

\* \* \*

(2) provide us with records and documents we request and permit us to make copies;

(3) submit to and subscribe, while not in the presence of any other **insured**:

(a) statements; and

(b) examinations under oath[.]

Hedges Decl., Ex. 1, Section I, Para. 2(d).

Section I provided as an additional condition:

12. **Intentional Acts**. If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

6

Hedges Decl., Ex. 1, Section I, Para. 12. Under Paragraph 5 of the heading **SECTION I AND SECTION II - CONDITIONS**, as modified under the heading "**AMENDATORY ENDORSEMENT (Ohio)**," defendant "may cancel" the policy "if evidence of arson exists." Hedges Decl., Ex. 1, Section I and Section II - Conditions and Amendatory Endorsement (Ohio), Para. 5(b)(1)(c). In light of these provisions, arson would be a defense to coverage, and therefore a matter reasonably within the scope of State Farm's investigatory authority under the policy.

State Farm's investigation of the fire at the insured residence revealed that the fire started in the basement of the house, and that an accelerant was used to start the fire, thus indicating arson. Hedges Decl., Paras. 7-8. Claim Administrator Scott Hedges also learned during his recorded conversation with plaintiff on August 24, 2010, see Hedges Decl., Ex. 3, that plaintiff was attempting to open a restaurant in Sunbury, Ohio, with attendant financial obligations, and that the Internal Revenue Service had a lien against plaintiff in the amount of $391,000 for unpaid taxes. Hedges Decl., Para. 9. Hedges concluded that this information suggested that plaintiff might have a motive to commit arson in order to collect the insurance proceeds on the residence. The liability limits specified in the policy were substantial: $218,000 for the dwelling, $21,800 for an extension of the dwelling, and $163,500 for personal property. Hedges Decl., Ex. 1. Plaintiff also informed Hedges on August 24, 2010, that he had previously filed an insurance claim in 2006 for losses sustained in an arson-related fire at his restaurant in Coshocton.

On September 20, 2010, Hedges sent a letter to plaintiff's

7

counsel requesting that plaintiff provide personal and business bank statements, cell phone statements from April 2010 through the present, tax returns for 2007, 2008 and 2009, personal and business loan statements from April 2010 through the present, and all correspondence relating to his personal and business loans from September 2009 through the present.  Hedges Decl., Ex. 4.  By letter dated October 14, 2010, plaintiff's counsel provided Hedges with personal and business checking and savings account information, credit card statements, cell phone records for plaintiff's phone (the account was registered in the name of Emily Kobel, plaintiff's former girlfriend) and an auto loan statement. Doc. 22, Ex. 2.

In a letter dated November 5, 2010, Timothy Ryan, retained as counsel by State Farm, notified plaintiff's counsel that State Farm was requesting various business and financial records, including income tax returns, documents reflecting income sources, monthly expenses, and purchases over $1,000 for the preceding twelve months, bank records, credit card statements, loans and past due notices, and documents relating to any prior losses or damage to property within the past five years.  Hedges Decl., Ex. 5.  By letter to plaintiff's counsel dated November 22, 2010, Ryan acknowledged receipt of various bank statements, but indicated that State Farm had not yet received certain mortgage statements, correspondence regarding loans, or copies of plaintiff's personal tax returns.  The letter also noted correspondence from plaintiff's accountant indicating that plaintiff's corporate tax returns for 2007-2009 had not yet been finalized.  Doc. 22, Ex. 3.

In a letter to plaintiff's counsel dated December 30, 2010,

Ryan noted that he was forwarding a transcript of plaintiff's examination conducted on December 10, 2010, and requested that plaintiff make any necessary changes. Ryan also requested documents related to the construction of plaintiff's restaurant in Sunbury, Ohio, including the original budget and business plan for the project, a schedule of payments to contractors and a record of any payments due to contractors, correspondence to and from contractors, and documentation regarding capital contributions or loans from investors. Hedges Decl., Ex. 6. Ryan wrote plaintiff's counsel on January 14, 2011, noting that the documents requested in December had not yet been provided. Hedges Decl., Ex. 7.

On January 21, 2011, Ryan informed plaintiff's counsel by letter that State Farm had authorized the retention of a forensic accountant at State Farm's expense to conduct a review of plaintiff's records at a location of his choosing, thus relieving plaintiff of the need to gather and copy documents. Ryan also requested that the accountant have access to financial documentation relating to the performance of the Coshocton restaurant as well as the capitalization and construction of the Sunbury restaurant. Ryan indicated that the accountant was available on January 31, 2011, to conduct the review. Hedges Decl., Ex. 8. The review of records originally scheduled for January 31, 2011, did not go forward, and Ryan informed plaintiff's counsel on that date that the accountant would be available on February 10, 2011. Ryan also requested that plaintiff make available records for the Coshocton restaurant for the preceding three years. Hedges Decl., Ex. 9.

In a letter to Ryan dated February 2, 2011, plaintiff's

9

counsel claimed that State Farm's request to examine plaintiff's business records was unreasonable, alleging that the financial records which had been provided demonstrated that plaintiff was substantially current on all financial obligations with the exception of one missed house payment, which plaintiff contended was inadvertent. Counsel also contended that there was no evidence that plaintiff intentionally caused the fire. He noted the report of Scott Bennett of Fire Investigation Services dated November 7, 2010, which opined that the loss was the result of an intentional act based on burn patterns, and that an unidentified ignitable liquid was used to spread the fire. Counsel then stated that plaintiff had reported that paint thinners and other ignitable liquids were stored in various locations in the basement. Counsel also requested any additional evidence of arson in State Farm's possession. Hedges Decl., Ex. 10.

By letter to plaintiff's counsel dated February 4, 2011, Ryan sought clarification of whether plaintiff was at that point refusing to participate further in the investigation. Ryan noted that the accountant's analysis could go either way in determining whether plaintiff had a financial motive to set the fire. Ryan indicated that his review of plaintiff's examination testimony had raised as many questions as answers, and opined that it would be in plaintiff's best interest to have the forensic accountant look at all of the records at one time and seek to reconcile the examination testimony with the financial records. He reiterated that the decision to utilize the services of an accountant was in part based on counsel's earlier comments that plaintiff was very busy and had been unable to gather the previously requested

information, such as balance sheets and other financial documents, which had not been produced.  Ryan requested that counsel contact him by February 9, 2011, regarding when the accountant could be given access to plaintiff's records.  Hedges Decl., Ex. 11.

Ryan wrote to plaintiff's counsel again on February 10, 2011, stating that State Farm's investigation was ongoing due to evidence of an incendiary fire and the absence of evidence to exclude plaintiff as a possible participant in the cause of the fire.  Ryan noted a supplemental report from Bennett, wherein Bennett stated that he spoke with plaintiff and his son, Zack, about the presence of ignitable liquids in the home, and both plaintiff and his son stated that they were unaware of the presence of ignitable liquids in the residence, and that only cans of latex paint were there.  In addition, Bennett clarified that he found evidence of a pour pattern in the area of origin.  Ryan further stated in his letter that plaintiff's refusal to permit review of his financial records could be considered a failure to cooperate in the claim investigation, providing a basis for the denial of the claim. Hedges Decl., Ex. 12.

In a letter to plaintiff's counsel dated February 15, 2011, Ryan indicated that State Farm had authorized him to release the cause and origin report.  He asked counsel to provide him with a date for review of plaintiff's records by the forensic accountant, and indicated that he would coordinate the review with the schedule of plaintiff's accountant if plaintiff wanted to have his own accountant present during the review.  Ryan further noted that he had not yet received the Nationwide Insurance cancellation letter terminating the homeowner's policy on the residence, or, in the

alternative, a signed release which would authorize Nationwide to provide that information to State Farm.  Hedges Decl., Ex. 13.

By letter to plaintiff's counsel dated February 23, 2011, Ryan referenced a telephone conversation with plaintiff's counsel on February 16, 2011, during which counsel indicated that he would be asking plaintiff about his willingness to permit the forensic accountant to review his records.  Ryan gave plaintiff a deadline of February 25, 2011, to decide whether to permit the review.  Ryan noted the history of his correspondence with counsel, and reminded counsel that he had not yet received the Nationwide cancellation letter or a signed authorization, a statement of errors for the December examination transcript, or the records concerning the Sunbury restaurant which he had previously requested.  Hedges Decl., Ex. 14.

Following a telephone call with counsel on February 28, 2011, Ryan sent another letter providing possible dates for the accountant's review through March 10, 2011.  Hedges Decl., Ex. 15. By letter to plaintiff's counsel dated March 2, 2011, Ryan provided counsel with a list of the documents the accountant wanted to examine during his evaluation.  Hedges Decl., Ex. 16.  On March 7, 2011, Ryan again corresponded with plaintiff's counsel, indicating that March 10, 2011, was the only viable date remaining for the accountant's examination.  He again noted plaintiff's failure to provide a signed authorization permitting State Farm to obtain the policy information from Nationwide or the errata sheet for the examination transcript.  Hedges Decl., Ex. 17.  On March 16, 2011, Ryan wrote to plaintiff's counsel to inform him that plaintiff's position that the accountant's review could not take place until

May 2, 2011, was unacceptable to State Farm.  Hedges Decl., Ex. 18.
By letter dated June 7, 2011, plaintiff was notified that his
policy was being voided.  Hedges Decl., Ex. 19.  There is no
evidence in the record that plaintiff made any effort to make his
records available to State Farm in the interim between Ryan's
letter of March 16th and State Farm's letter of June 7th.

Plaintiff does not dispute this history of correspondence or
the accuracy of the information therein, nor does he deny that he
failed to provide requested documents.  Rather, he argues that the
requested records were not relevant to State Farm's investigation.
However, where an insurance company raises arson as an affirmative
defense to liability, "there are strong public policy
considerations supporting the admission of evidence of the
insured's financial position to show a possible motive for the
fire."  Gabor, 66 Ohio App.3d at 144-45.  Where the insurer's
investigation indicates that arson is a possible cause of fire
damage, the policyholder's failure to provide the insurer with
pertinent financial information may void a policy for breach of the
cooperation clause.  Id. at 145; see also Moore v. State Farm Fire
& Cas. Co., Nos. 9200, 9376 (2nd Dist. unreported), 1985 WL 62876
at *4 (Ohio App. Dec. 3, 1985)(an income tax return is per se
relevant in case where insurer raises arson as affirmative defense
to liability on insurance policy).

In Gabor, the court held that because the insured's financial
condition is relevant to a determination of possible motive for
incendiarism, and because tax records create a picture of the
insured's entire financial situation, the insured's failure to
produce tax records constituted a substantial and material breach

13

of his contractual duty to cooperate.  Id.  The court concluded that this breach clearly prejudiced the insurer's investigation into possible motives for arson, and relieved the insurer of further obligation with respect to the claim as a matter of law, warranting summary judgment for the insurer.  Id.

In Doerr, the Sixth Circuit disagreed with the insured's characterization of his financial records and income tax returns as being irrelevant.  The court noted that because the surrounding circumstances indicated that the fire was intentionally set, the insured's financial condition at the time of the fire was relevant to the investigation. Doerr, 121 Fed.Appx. at 641 (citing Templin v. Grange Mut. Cas. Co., 81 Ohio App.3d 572, 576, 611 N.E.2d 944 (1992)("Motive is relevant to the investigation of a suspicious fire claim; an insured's precarious financial position may establish a motive for arson.")) The court further stated that the insured's income tax forms and bank records were relevant documentary evidence demonstrating his financial condition. Id. The court affirmed the order granting summary judgment to the insured, concluding that the insured's failure to produce the requested documents materially prejudiced the insurer's arson investigation as a matter of law. Id. at 641-42. See also Gaston v. Allstate Ins. Co., No. 4:08 cv 0749 (unreported), 2008 WL 5716525 at *3-4 (N.D.Ohio July 31, 2008)(because insurer reasonably suspected arson, insured's failure to produce income tax returns and bank records in violation of cooperation clause resulted in material and substantial prejudice to insurer as a matter of law).

Plaintiff's failure to provide the requested financial documents resulted in a failure to satisfy a condition precedent to

14

State Farm's obligation to pay his claim.  In <u>Savage v. American Family Ins. Co.</u>, 178 Ohio App.3d 154, 160, 897 N.E.2d 195 (2008), the insureds questioned the need to provide their tax returns.  The court noted that under the cooperation clause in the policy, providing relevant financial records was a condition of the contract which had to occur, unless its non-occurrence was excused, before performance under the policy became due.  <u>Id.</u>  The court stated that the requested tax returns were relevant to assessing the insureds' financial condition and to clarify the discrepancy between their bankruptcy schedule of personal property and property allegedly in their possession at the time of burglary which led to the claim.  <u>Id.</u>  The court held that the insurer was not obligated to perform under the contract until the insureds had satisfied the conditions precedent of providing tax returns and submitting to examination under oath, and that since these conditions were not satisfied, summary judgment for the insured was appropriate.  <u>Id.</u> at 160-61.

State Farm had substantial evidence that the fire was the result of an intentional act.  Plaintiff stayed at a motel near the house on the night before the fire, and later made inconsistent statements to State Farm's investigators.  State Farm also had information early in the investigation indicating that plaintiff had significant financial obligations and a large tax liability. In light of these circumstances, State Farm's efforts to investigate plaintiff's financial situation by seeking to examine his financial records were warranted and reasonable, and no genuine dispute has been shown to exist in that regard.

In light of plaintiff's failure to make his financial records

available for inspection, the cooperation clause, a condition precedent, was not satisfied.  The fire occurred on August 18, 2010.  From mid-September, 2010, through mid-March, 2011, a six-month period, State Farm unsuccessfully made repeated attempts to make arrangements for its accountant to review plaintiff's financial records, and attempted to accommodate plaintiff's busy schedule.  Although plaintiff claimed that he could make his records available on May 2, 2011, there is no evidence that he made any further efforts to tender his records between Ryan's letter of March 16, 2011, and State Farm's letter of June 7, 2011, which voided the policy roughly ten months after the fire.  Plaintiff cites no authority which would require State Farm to keep its investigation open indefinitely in the hopes that plaintiff would eventually cooperate.  <u>Compare</u> <u>Moore</u>, 1985 WL 62876 at *1, 4 (finding a substantial and material breach of policy's cooperation clause where plaintiffs failed to produce tax returns in the nine-month period between the fire and the filing of plaintiffs' action).  This court concludes that there is no genuine dispute that plaintiff's failure to permit inspection of his financial records resulted in substantial and material prejudice to State Farm, violated the cooperation clause, and warranted State Farm's denial of the claim and cancellation of the policy.

<u>III. Concealment and Fraud Clause</u>

State Farm further argues that it is entitled to summary judgment due to misrepresentations made by plaintiff during the investigation, which rendered the policy void under the concealment and fraud clause.  Under the heading **SECTION I AND SECTION II - CONDITIONS**, the policy stated:

16

2. **Concealment or Fraud.**  This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

Hedges Decl., Ex. 1, Section I and Section II - Conditions, Para. 2.

Ohio law recognizes the enforceability of conditions within insurance policies for obtaining coverage, including conditions excluding losses for concealing or misrepresenting material facts or circumstances.  See Gearing v. Nationwide Ins. Co., 76 Ohio St.3d 34, 665 N.E.2d 1115, 1117 (1996).  A misrepresentation is considered material if a reasonable insurance company, in determining its course of action, would attach importance to the fact misrepresented.  Abon, Ltd. v. Transcontinental Ins. Co., No. 2004-CA-29 (5th Dist. unreported), 2005 WL 1414486 at *13 (Ohio App. June 16, 2005).  The materiality of a misrepresentation is a mixed question of law and fact.  Id.  The subject of the misrepresentation need not ultimately prove to be significant to the disposition of the claim, so long as it was reasonably relevant to the insurer's investigation at the time.  Id.  A false sworn answer is material if it is calculated either to discourage, mislead or deflect the insurer's investigation in any area that might seem to the insurer, at that time, a relevant or productive area to investigate.  Rose v. State Farm Fire & Cas. Co., No. 2:10-cv-874 (unreported), 2010 WL 3583248 at *8 (S.D.Ohio Aug. 20, 2012).

State Farm alleges that plaintiff attempted to mislead its investigator concerning his whereabouts at the time of the fire. State Farm has presented evidence that on August 19, 2010,

17

plaintiff was interviewed by Claim Administrator Scott Hedges and defendant's investigator, Greg Gilkey.  According to Hedges, plaintiff stated that he was in Coshocton, Ohio, on the night of August 17, 2010, and the morning of August 18, 2010, when the fire occurred.  Hedges Decl., Paras. 11-12.  However, during the August 24, 2010, interview, plaintiff informed Hedges that he had checked into a Days Inn motel the night before the fire.  Ex. 3, pp. 11, 13.  He stated that he was embarrassed about the fact that he stayed at a hotel with the hope of having a sexual encounter.  Ex. 3, p. 66.  During the examination on December 10, 2010, plaintiff denied that he told Gilkey that he was in Coshocton, and  stated that he failed to inform Gilkey that he had spent the night before the fire at the Days Inn because he was embarrassed about his plans to meet with a female friend at the motel.  Doc. 22, pp. 147-148. The court concludes that a genuine dispute exists as to whether plaintiff's statements were calculated to discourage, mislead or deflect State Farm's investigation.

State Farm has also presented evidence that plaintiff gave Hedges false information concerning his cell phone coverage. During the August 24, 2010, interview, plaintiff was asked about phone calls he received while at the Days Inn.  Plaintiff stated that his cell phone was on his son's plan because he got a discount working at Kroger.  Ex. 3, pp. 13, 63.  On or about October 14, 2010, plaintiff's counsel provided plaintiff's cell phone records to Hedges, which described the account as being maintained by plaintiff's former  girlfriend, Emily Kobel.  Doc. 22-2.  This court concludes that the issue of whether the above information constituted a material misrepresentation is one for the trier of

fact.

State Farm has also presented evidence that plaintiff initially concealed the fact that he had made an insurance claim in 2006 for the fire loss of personal property located in his apartment above his Coshocton restaurant.  When asked about previous insurance claims during the interview on August 24, 2010, plaintiff stated that he had filed a claim with Ohio Mutual for losses to business property at his Coshocton restaurant following an arson fire in 2006.  Hedges Decl., Ex. 3, p. 30.  He also discussed other claims he filed in the 1990's regarding three theft losses and damage to the residence from a fallen tree.  Hedges Decl., Ex. 3, p. 39.  He did not reveal during this interview that he also made a claim to Nationwide Insurance in 2006 for fire damage to personal property which was located in his apartment above the restaurant.  Hedges Decl., Para. 14.  However, he was never specifically asked if the claims he identified during the August 24th interview were the only claims he had made.  In a later examination on December 10, 2010, plaintiff acknowledged that he had submitted a claim to Nationwide Insurance for the contents of his apartment.  Doc. 22, p. 9.  The issue of whether plaintiff's conduct was calculated either to discourage, mislead or deflect State Farm's investigation presents a jury question in this case.

The court concludes that State Farm is not entitled to summary judgment based on the alleged violations of the concealment and fraud clause.

## IV. Misrepresentations on Application as Warranties

State Farm further argues that it was justified in voiding the policy due to misstatements made by plaintiff on the policy

application.    Under Ohio law, if a misstatement of fact is a warranty, the misstatement voids the policy ab initio, whereas if the misstatement is a representation, the misstatement renders the policy voidable.  <u>Allstate Ins. Co. v. Boggs</u>, 27 Ohio St.2d 216, 218-19, 271 N.E.2d 855 (1971).  A warranty is a statement by the insured of a material fact either appearing on the face of the policy or in another instrument specifically incorporated in the policy.  <u>Id.</u>, 27 Ohio St.2d at 219.  A misstatement by an insured renders a policy void ab initio if the misstatement plainly appears as a warranty on the face of the policy or is plainly incorporated into the policy as a warranty, and the policy unambiguously provides that a misstatement as to the warranty will render the policy void from its inception.  <u>Id.</u>

The declarations section of the State Farm policy in this case stated: "We agree to provide the insurance described in this policy ... in reliance on your statements in these **Declarations**."  Hedges Decl., Ex. 1.  The policy further provided:

You agree, by acceptance of this policy, that:

* * *

2.  the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true;

* * *
Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance our Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or

agency cancel or refuse to issue or renew similar insurance to you or any household member.

Hedges Decl., Ex. 1.

The policy also contained another **AMENDATORY ENDORSEMENT** which added the following language to the policy declarations:

You agree, by acceptance of this policy, that:

1. any application for the insurance provided by this policy, including any warranty made by you, is a part of this policy; and

2. all statements in the application for insurance and in the Declarations are warranties.

This policy is void from its inception, if any warranty made by you is found to be false.

Hedges Decl., Ex. 1, Amendatory Endorsement.

The State Farm policy specifically includes within the declarations section the statements made on the application concerning loss history and coverage history, and also expressly incorporates all statements made in the application into the policy as warranties. The policy specifically states that the policy is void from its inception if any warranty is found to be false. Thus, the policy complies with the requirements announced in Boggs.

State Farm has produced evidence that plaintiff made material misrepresentations in applying for the policy. In her affidavit, Christi Weiss, a licensed agent in the office of Joni Stanton, a State Farm agent, stated that she took the application for a homeowner's policy from plaintiff on March 5, 2009. Doc. 20, Ex. B. In response to the question "Has applicant had any losses, insured or not, in the past 5 years?", plaintiff answered "No." Weiss Aff., Para. 4. In response to the question "Has any insurer

21

or agency canceled or refused to issue or renew similar insurance to the named applicant or any household member within the past 3 years?", plaintiff answered "No." Weiss Aff., Para. 5. According to the affidavit of Joseph Montes, Personal Lines Underwriting Team Manager for State Farm, plaintiff also represented in the application that he was the "owner" of the property to be insured under the policy. Doc. 20, Ex. C, Para. 5.

During the examination on December 10, 2010, plaintiff admitted that he had submitted a claim to Nationwide Insurance for the contents of his apartment above the restaurant following the fire there on July 10, 2006, within three years of the application. Doc. 22, p. 9. Plaintiff acknowledged that he had sustained losses, and did not deny giving a negative answer to the question on the application about prior losses; rather, he stated only that he did not recall being asked that question when applying for the policy. Doc. 22, pp. 21-26.

During the December 10, 2010, examination, plaintiff also stated that he had a Nationwide homeowner's policy on the residence prior to his acquisition of the State Farm policy. Doc. 22, p. 16. Plaintiff said that Nationwide had sent him a notice of cancellation, which indicated that the policy would be cancelled in thirty days if plaintiff did not complete certain repairs to the house. Plaintiff stated he did not recall the exact date of the cancellation. Doc. 22, p. 17, 20. Plaintiff also stated that he did not recall being asked about the cancellation of any other insurance policies in making the application, but claimed that if he had been asked that question, he would have said "Yes." Doc. 22, p. 20. In his later deposition of November 1, 2012, plaintiff

again stated that he could not recall the effective date of the cancellation of the Nationwide policy, but that it was right around the effective date of the State Farm policy. After receiving the cancellation notice from Nationwide, he saw the State Farm office sign and called them. Doc. 24, pp. 106-109. When asked if he told State Farm's agent that the Nationwide policy had been cancelled, he stated "I believe I did." Doc. 24, p. 109.

In his interview with Hedges on August 24, 2010, plaintiff stated that his divorce from his ex-wife was final in 2007, and that the insured residence was deeded in her name only. Hedges Decl., Ex. 3, pp. 4, 40. During a later examination of plaintiff on December 10, 2010, plaintiff was asked about the ownership of the residence. He stated that the residence was deeded in his ex-wife's name prior to their divorce in 2007. Doc. 22, pp. 89-92.

Uncontroverted evidence establishes that plaintiff knew in 2009, when he completed the insurance application for State Farm's homeowner's policy, that he was not the owner of the residence. Plaintiff has also pointed to no evidence sufficient to create a genuine dispute as to whether he responded "No" to the question of prior losses. However, even assuming that plaintiff's testimony concerning that issue and whether he responded "No" to the question about policy cancellations would ordinarily be sufficient to create a factual issue on that point, that does not get plaintiff over the hurdle presented by the declarations section of the policy. The declarations section stated that by accepting the policy, plaintiff agreed that his statements in the declarations section were his statements and were true. Included in the declarations section was the language "you state that during the three years preceding the

23

time of your application for this insurance ... you have not had any losses, insured or not; and ... you have not had any insurer or agency cancel ... similar insurance[.]" Hedges Decl., Ex. 1, Declarations. Plaintiff accepted the policy, and there is no evidence that he ever objected to this language in the declarations section. He cannot now deny that these statements in the policy were his. See Jaber v. Prudential Ins. Co. of Am., 113 Ohio App.3d 507, 512, 681 N.E.2d 478 (1996)(where policy contained language that insured, by accepting policy, agreed that statements on application were true, reasonable minds could only conclude that misstatements on application voided policy ab initio).

State Farm has also presented evidence that the questions on the application at issue involved information material to State Farm's decision to issue the policy. Weiss stated in her affidavit that if plaintiff had informed her about his arson fire in 2006 and that his policy with Nationwide was cancelled or in the process of being cancelled, she would not have submitted the application to State Farm. Weiss Aff., Paras. 7-8. Montes stated that if plaintiff had informed State Farm about the fire in 2006 and the fact that he did not own the property and that Nationwide had cancelled his previous homeowner's policy, plaintiff would have been rated as an undesirable risk. Plaintiff would not have been issued a homeowner's policy and would only have been eligible for a renter's insurance policy which would not have covered the structure of the house. Montes further stated that even in the unlikely event that a homeowner's policy was issued, at a minimum, plaintiff would have been required to pay higher premiums and agree to a higher deductible. Montes Aff., Paras. 6-9.

24

Plaintiff argues that State Farm should bear the risk of there being false statements on the insurance application.  He contends that State Farm should have verified whether plaintiff owned the house by checking with the county recorder's office, and that State Farm should have investigated whether plaintiff had prior losses or cancelled policies.  However, plaintiff cites no authority which imposes a duty on the insurer to independently investigate whether the statements on an insurance application are correct prior to issuing the policy, and it is doubtful that Ohio courts would do so.  Cf. Luntz, 135 Ohio St. at 231 (noting in context of failure to assist in defense that policy was violated and rights under policy were forfeited "notwithstanding the insurance company could otherwise have protected itself.")  Such a rule would undoubtedly prolong the application process while leaving applicants without needed insurance coverage.  The court also notes that State Farm did attempt to investigate the date of Nationwide's cancellation of plaintiff's previous policy, but was unsuccessful because Nationwide refused to provide that information without a suitable release, which plaintiff refused to sign.

The court concludes that the policy was void ab initio due to misrepresentations on the insurance application which were designated as warranties in the policy, and that no genuine dispute has been shown to exist in that regard.

IV. Bad Faith Claim

Plaintiff alleged in his complaint that State Farm violated its duty of good faith and fair dealing in refusing to pay his claim.  Plaintiff's memorandum contra does not address State Farm's motion for summary judgment on this claim.

A cause of action in tort under Ohio law arises when an insurer breaches its duty to the insured to act in good faith. Staff Builders, Inc. v. Armstrong, 37 Ohio St.3d 298, 302-303, 525 N.E.2d 783 (1988).  The mere refusal to pay insurance is not sufficient in itself to establish bad faith.  Helmick v. Republic-Franklin Ins. Co., 39 Ohio St.3d 71, 76, 529 N.E.2d 464 (1988). The crucial inquiry is whether "the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial," not whether the insurance company's decision to deny benefits was correct.  Thomas v. Allstate Ins. Co., 974 F.2d 706, 711 (6th Cir. 1992)(applying Ohio law); see also Hoskins v. Aetna Life Ins. Co., 6 Ohio St.3d 272, 276-77, 452 N.E.2d 1315 (1983).

To prevail on a bad faith claim, the insured must establish that the insurer's refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor. Zoppo v. Homestead Ins. Co., 71 Ohio St.3d 552, syllabus, 644 N.E.2d 397 (1994).  Courts look to whether "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim."  Tokles & Son, Inc. v. Midwestern Indemn. Co., 65 Ohio St.3d 621, 605 N.E.2d 936, 943 (1992).

When the denial of benefits was legally correct under the terms of the applicable insurance policy, it cannot be found that the insurer's denial of benefits was arbitrary or capricious, or that a reasonable justification for the denial did not exist. Rose, 2012 WL 3583248 at *11; Goodgame v. State Farm Fire and Cas. Co., No. 1:09-CV-00920 (unreported), 2010 WL 816497 at *3 (N.D.Ohio

26

March 4, 2010)(insurer entitled to summary judgment on bad faith claim where denial of claim was justified due to insured's material breach of obligation to cooperate with insurer's investigation); Gaston, 2008 WL 5716525 at *5 (where insurer was justified in denying claim because of plaintiff's material breach of the cooperation clause in policy, insurer was entitled to summary judgment on bad faith claim).

In light of the misrepresentations made on the policy application and during the course of the claim investigation and plaintiff's failure to cooperate with the investigation, State Farm was justified in voiding the policy and denying the claim, and the denial of benefits was not arbitrary and capricious. Because State Farm is entitled to summary judgment on plaintiff's breach of contract claim in light of plaintiff's breach of the cooperation and misrepresentation clauses warrants, State Farm is also entitled to summary judgment on the bad faith claim.

V. Conclusion

For the reasons stated above, State Farm is entitled to summary judgment. The motion for summary judgment (Doc. 20) is granted. The clerk is instructed to enter judgment in favor of State Farm on plaintiff's claims.

Date: February 22, 2013         s/James L. Graham
                                James L. Graham
                                United States District Judge